# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**MARK ROSENHOCH,**

**Plaintiff,**

**v.**                                          **CASE NO:**

**AMAZON.COM SERVICES LLC,**

**Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MARK ROSENHOCH, (hereinafter "Plaintiff" or "Mr. Rosenhoch"), by and through the undersigned counsel, hereby sues Defendant, AMAZON.COM SERVICES LLC (hereinafter "Defendant," "Amazon," or "Company") and alleges:

## INTRODUCTION

1.      The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"). In addition, Plaintiff seeks to redress violations by Defendant of the Family and Medical

Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"), and the Florida Private Whistleblower Act, § 448.102 et seq. ("FPWA").

2.    As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability, and retaliated against him in violation of his rights under the ADA and the FCRA. Plaintiff further alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against him for exercising those rights in violation of the FMLA. Additionally, Plaintiff alleges that Defendant retaliated against him for reporting violations of law in violation of the FPWA.

3.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.      Plaintiff is MARK ROSENHOCH, a 45-year-old male who has been diagnosed with Type 1 diabetes requiring insulin management, Post-

Traumatic Stress Disorder (PTSD), high cholesterol, Hashimoto's Thyroiditis, and high blood pressure.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on his disability under the ADA, the FCRA, the FMLA, and the FPWA.

10. Plaintiff is also protected under the ADA based on his association with disabled family members, including his son who suffers from borderline intellectual functioning disorder and his wife who suffers from ongoing health complications from cancer treatment.

11. During the period from April 4, 2016, until December 6, 2023, Defendant employed Plaintiff in various positions including Area Manager, Diversity Program Manager, HR Investigator, and Senior Employee Relations Investigator.

12. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

13. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, the FCRA, the FMLA, and the FPWA.

14. The Defendant, AMAZON.COM SERVICES LLC, is a Foreign

Limited Liability Company with its principal headquarters located at 410 Terry Avenue North, Seattle, WA 98109.

15.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, from one of its locations at 3350 Laurel Ridge Ave, Ruskin, FL 33570, where they employed Plaintiff.

16.    At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to the ADA, the FCRA, the FMLA, and the FPWA.

17.    Accordingly, Defendant is liable under the ADA, the FCRA, the FMLA, and the FPWA for the unlawful discrimination, retaliation, interference, and whistleblower retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

18.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

19.    On March 20, 2024, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations

("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation. Plaintiff filed an Amended Charge of Discrimination on July 12, 2024.

20.    On September 19, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2024-03616) against Defendant.

21.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23.    Plaintiff Mark Rosenhoch is a 45-year-old individual who suffers from multiple disabilities including Type 1 diabetes requiring insulin management on a sliding scale dose, Post-Traumatic Stress Disorder (PTSD), high cholesterol requiring Atorvastatin, Hashimoto's Thyroiditis requiring

Levothyroxin, and high blood pressure requiring Lisinopril.

24.    Plaintiff is also associated with disabled family members, including his son DJ, who has been diagnosed with Autism Spectrum Disorder as of July 2024. DJ's IQ was reevaluated and determined to be 67, and he operates cognitively at approximately a 12-year-old level. He is transgender, autistic, and suffers from chronic intercostal neuralgia following a 2018 double mastectomy. Plaintiff's wife, Danila, suffers from ongoing health complications stemming from cervical cancer treatment received in 2015.

25.    On April 4, 2016, Plaintiff began working for Defendant Amazon.com Services LLC as an Area Manager at the TPA1 Fulfillment Warehouse in Ruskin, Florida, with a starting salary of $78,000, a $23,000 signing bonus, and 130 restricted stock units.

26.    Shortly after starting his employment in 2016, Plaintiff requested a reasonable accommodation for his Type 1 diabetes to allow him to keep sugar-containing foods and drinks on the warehouse floor to manage hypoglycemic episodes, which could be life-threatening if not treated immediately.

27.    Defendant initially approved Plaintiff's accommodation request

for one to two days, allowing him to keep necessary items on the warehouse floor to manage his diabetes.

28.    However, Defendant subsequently modified and effectively denied Plaintiff's accommodation by requiring him to walk five to ten minutes to the break room or cafeteria whenever he needed to treat a hypoglycemic episode, creating significant health risks during such medical emergencies.

29.    When Plaintiff inquired about the change to his accommodation, he was informed by human resources that other employees thought it was "unfair" that he could eat and drink on the warehouse floor, demonstrating Defendant's failure to engage in the interactive process and prioritizing non-disabled employees' opinions over Plaintiff's medical needs.

30.    In July 2018, Plaintiff was promoted and transferred to Enumclaw, Washington, to work as a Diversity Program Manager. Notably, Plaintiff was the only White manager in a field-based diversity role who was required to relocate, while Black diversity managers in other states were not required to move from their locations.

31.    In September 2019, Plaintiff transitioned to Amazon Central Investigations as an HR Investigator, and in December 2019, he moved back

to Florida when his father was dying of terminal cancer, continuing his work remotely.

32.    In April 2021, Plaintiff was promoted to the position of Senior Employee Relations Investigator. Following this promotion, Plaintiff received a salary increase, with a subsequent additional increase at the end of 2022 after the annual review cycle. As a result of these adjustments, Plaintiff's final annual salary reached $136,000 in 2023. In this role, Plaintiff was responsible for investigating workplace discrimination, harassment, workplace violence, bullying, retaliation, and wrongful termination claims.

33.    Throughout his tenure as an investigator, Plaintiff completed hundreds of workplace investigations with not a single case ever being overturned or reversed, maintaining a spotless disciplinary record over 7.5 years of employment with no disciplinary actions whatsoever.

34.    In early 2023, during the course of his investigative duties, Plaintiff discovered substantiated discrimination claims involving Director Chris Preston, a White male director, who had a finding against him for not allowing a fair process for an Asian woman to be considered for promotion.

35.    When Plaintiff escalated the Preston discrimination case to Taylor Stahl, the Director of Employee Relations Investigations for Amazon,

no corrective action was taken, with the justification that "too much time had passed," despite the substantiated equal employment opportunity violation. At the time, Plaintiff's direct supervisor was Cathy Hanna, whose manager was Mark Thompson, and Stahl was three levels above Plaintiff in the reporting hierarchy.

36.    In April 2023, Plaintiff discovered and escalated an uninvestigated claim of gender discrimination and harassment by former employee Marc Gross to Taylor Stahl, VP Udit Madan, and VP Sandy Gordon. Despite Plaintiff's efforts, Defendant failed to open an investigation into these serious allegations.

37.    Beginning in February 2023, Plaintiff's son DJ's neurologist recommended radiofrequency nerve ablation surgery to treat his chronic intercostal neuralgia, which caused extreme daily pain. However, Defendant's health insurance provider, Premera Blue Cross, initially denied coverage for this medically necessary procedure.

38.    From March through June 2023, Plaintiff spent countless hours attempting to obtain assistance from Included Health, Defendant's third-party benefits navigation service for approximately 700,000 employees. Despite multiple lengthy phone calls, including a 37-minute call on April 24,

2023, a 1 hour 24-minute call on May 9, 2023, a 1 hour 58-minute escalation call on May 17, 2023, a 1 hour 46-minute call on May 19, 2023, and a 1 hour 21-minute call on June 21, 2023, Plaintiff received no meaningful assistance.

39.    The lengthy and unsuccessful attempts to navigate Defendant's benefits system caused Plaintiff significant stress and anxiety, particularly given his son's disability and need for advocacy due to his diagnosis of Autism Spectrum Disorder, with an updated IQ of 67 as of July 2024.

40.    On June 22, 2023, Plaintiff was finally connected with Amazon Benefits Manager Brad Goodson, who removed Included Health from the case due to their failure to provide adequate service.

41.    On July 20, 2023, after months of denied claims and inadequate support, Plaintiff sent an executive escalation letter to Amazon senior leadership regarding what he perceived as medical benefits discrimination against his disabled son.

42.    Due to the stress caused by the ongoing benefits issues and the need to care for his disabled family members, Plaintiff developed Post-Traumatic Stress Disorder (PTSD), which was diagnosed on July 15, 2023, by Christine Edwards, LMHC.

43.    On July 15, 2023, Plaintiff began FMLA leave to address his stress

and anxiety and to care for his wife and son's medical issues. His leave was initially approved through September 30, 2023.

44.    Prior to taking FMLA leave, Plaintiff was forced to use three weeks of his accrued vacation time from June 26 through July 14, 2023, to address the medical issues affecting his family while attempting to resolve the benefits escalation.

45.    On July 28, 2023, Benefits Manager Brad Goodson asked Plaintiff's disabled son DJ to write a statement about his pain levels. DJ found this request disrespectful due to his disability and difficulty with writing, demonstrating Defendant's insensitivity to the needs of disabled individuals.

46.    On August 1, 2023, Goodson informed Plaintiff that the escalation summary had been reviewed by leadership including Lian Neeman and Brent Jaye, sent to legal review, and then forwarded to Senior Vice President Beth Galetti for final determination.

47.    After Plaintiff's leave ended on September 30, 2023, he requested a personal leave extension through October 23, 2023, to continue addressing his family's medical needs.

48.    In October 2023, following Plaintiff's persistent advocacy,

Defendant ultimately reimbursed Plaintiff for 88 hours of vacation time and 16 hours of PTO, effectively admitting that their benefits team had failed Plaintiff and his family.

49.    However, despite this acknowledgment of the benefits team's failures, Senior Vice President Beth Galetti ultimately upheld the denial of DJ's medically necessary surgery after a fiduciary review meeting on October 30, 2023.

50.    Throughout this period, Plaintiff's direct supervisor from May 2021 through his termination was Cathy Hanna, who was aware of Plaintiff's family medical situations but never engaged in the interactive process to discuss potential accommodations for Plaintiff's PTSD or other disabilities.

51.    In November 2023, during conversations with supervisor Cathy Hanna, Plaintiff expressed his concerns about the "toxic work environment at Amazon, where employees that were deemed 'top performers' were never disciplined by the company and where no one bothered to follow-up on closed cases to make sure that corrective actions were correctly implemented."

52.    Plaintiff also informed Hanna that he was "contemplating going public with this information" to force Defendant to take accountability for its

discriminatory practices and failure to address substantiated discrimination findings.

53.    During his investigative work, Plaintiff had discovered a pattern of discrimination and retaliation that went unaddressed by Defendant's leadership, including employees' fears of retaliation from certain managers and dismissive attitudes toward discrimination complaints from leadership including VP Udit Madan.

54.    Believing that Defendant was engaging in ongoing violations of law and fearing retaliation for his complaints about discrimination and the toxic work environment, Plaintiff downloaded approximately 800 confidential investigation files to a personal USB drive to preserve evidence of Defendant's legal violations.

55.    On November 21, 2023, Plaintiff informed supervisor Cathy Hanna that he possessed confidential case files and might go public with information about Defendant's legal violations if he did not receive substantial severance.

56.    On November 22, 2023, Plaintiff was immediately suspended by Monique Johnson from the HR4HR department, who stated the suspension was due to fear that Plaintiff might go public with confidential information

and for downloading investigation case files onto a personal USB drive.

57.     Notably, Monique Johnson was the same HR representative who had been involved in the benefits escalation process that Plaintiff had previously escalated to her manager Kenneth Brown due to Johnson's "lack of follow up and follow through." Johnson had received "verbal feedback/coaching from Brown" about Plaintiff's escalation and "took that personally."

58.     Following forensic analysis that confirmed Plaintiff had transferred more than 800 confidential files, Plaintiff initially provided incomplete information during HR conversations but later admitted to the file transfers when presented with the forensic evidence.

59.     Defendant gave Plaintiff a final deadline of noon on December 5, 2023, to sign a Certificate of Deletion for the confidential information, which Plaintiff refused to sign.

60.     On December 6, 2023, Monique Johnson terminated Plaintiff's employment, citing "unauthorized download of confidential information to a personal USB device" as the stated reason for termination.

61.     When Johnson contacted Plaintiff via text message about the December 6th termination call, she included an exclamation point at the end

of her message, giving the impression that "she seemed excited" to terminate Plaintiff, demonstrating the retaliatory animus behind the termination decision.

62.    Taylor Stahl, the Director of all Investigations teams at Amazon, was not Plaintiff's supervisor but oversaw the broader investigations function. After Plaintiff escalated concerns to Stahl regarding unaddressed findings from prior investigations involving Chris Preston's conduct and the lack of follow-up on Marc Gross's report of discrimination, Stahl informed Plaintiff that the investigation Plaintiff was conducting into the conduct of Chris Preston's direct supervisor, Vice President Sarah Rhodes, would be reassigned to him personally for "political" reasons. Stahl explained that the decision was made because Plaintiff, a Level 6 employee, was investigating Level 10 employees, which did not present "good optics" for senior leadership. In effect, the investigation was taken away from Plaintiff after he raised serious process and policy breakdowns that constituted violations of law, under the guise of "political" concerns.

63.    Defendant's termination of Plaintiff was inconsistent with its treatment of other employees, as Marc Smith, identified as a Black male employee, had a finding for sharing confidential information but "received

no feedback for the sharing of confidential information," demonstrating disparate treatment.

64.    Ironically, during Defendant's Union Avoidance Training, Plaintiff had been taught that "it was illegal to take action against and terminate an employee for saying they would go public with information that they believed to be a violation of law," yet Defendant terminated Plaintiff for exactly this conduct.

65.    As a direct result of Defendant's discriminatory and retaliatory conduct, Plaintiff lost his $136,000 annual salary, forfeited $68,000 in unvested restricted stock units (463 shares), and incurred significant COBRA premium costs of approximately $1,800 per month.

66.    Plaintiff has suffered and continues to suffer significant emotional distress, mental anguish, humiliation, and damage to his professional reputation as a result of Defendant's unlawful conduct.

67.    Defendant's actions have caused Plaintiff ongoing financial hardship and have interfered with his ability to obtain comparable employment in his field, given the circumstances surrounding his termination from a prominent employer like Amazon.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Disability Discrimination
### 42 U.S.C. §§ 12101-12213

68.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69.    Plaintiff is a 45-year-old male who has been diagnosed with Type 1 diabetes requiring insulin management on a sliding scale dose, Post-Traumatic Stress Disorder (PTSD), high cholesterol requiring Atorvastatin, Hashimoto's Thyroiditis requiring Levothyroxin, and high blood pressure requiring Lisinopril.

70.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

71.    At all times material herein, Defendant employed, and continues to employ, fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of the ADA. 42 U.S.C. § 12111(5)(A).

72.    Moreover, Defendant is a "person" within the meaning of the

ADA, 42 U.S.C. § 12101 et seq.

73.    At all times material herein, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA.

74.    Plaintiff's Type 1 diabetes, PTSD, and other medical conditions constitute "disabilities" within the meaning of the ADA as they substantially limit one or more major life activities, including but not limited to eating, sleeping, thinking, communicating, concentrating, and performing manual tasks.

75.    Defendant, as Plaintiff's employer, was obligated to provide reasonable accommodations for Plaintiff's disabilities and to guard against discrimination based on his disabilities by co-workers, supervisors, managers, and other persons in the workplace.

76.    Defendant was further obligated to engage in the interactive process with Plaintiff to determine effective reasonable accommodations for his disabilities.

77.    However, Plaintiff was subjected to discriminatory treatment based on his disabilities, as more particularly alleged hereinabove, including but not limited to the denial of reasonable accommodations for his Type 1 diabetes and the failure to engage in the interactive process regarding

accommodations for his PTSD.

78.     Specifically, Defendant initially approved Plaintiff's reasonable accommodation request to keep sugar-containing foods and drinks on the warehouse floor to manage life-threatening hypoglycemic episodes, but subsequently modified and effectively denied this accommodation by requiring him to walk five to ten minutes to the break room or cafeteria, creating significant health risks during medical emergencies.

79.     When Plaintiff inquired about the change to his accommodation, he was informed that other employees thought it was "unfair" that he could eat and drink on the warehouse floor, demonstrating Defendant's failure to engage in good faith in the interactive process and prioritizing non-disabled employees' opinions over Plaintiff's medical needs.

80.     After Plaintiff was diagnosed with PTSD in July 2023, Defendant failed to engage in any interactive process to discuss potential reasonable accommodations for his mental health condition, despite being aware of his diagnosis and his need for leave to address his condition.

81.     Defendant's supervisor Cathy Hanna was aware of Plaintiff's PTSD and family medical situations but never initiated discussions about potential accommodations that might have enabled Plaintiff to continue

performing his job duties effectively.

82.    Plaintiff believed that Defendant's discriminatory acts materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Defendant's discriminatory acts materially altered the terms and conditions of Plaintiff's employment.

83.    Plaintiff did not welcome the discriminatory acts and did not directly or indirectly invite or solicit them by his own acts or statements.

84.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the discrimination against Plaintiff based on his disabilities, but did not take prompt remedial action.

85.    Defendant violated the ADA by subjecting Plaintiff to discrimination because of his disabilities, including but not limited to: (a) denying him reasonable accommodations; (b) failing to engage in the interactive process; (c) altering the terms and conditions of his employment; and (d) ultimately terminating his employment under circumstances demonstrating discriminatory animus.

86.    Defendant's termination of Plaintiff was pretextual and motivated, at least in part, by discriminatory animus based on his disabilities, as evidenced by the timing of the termination following his

FMLA leave for mental health treatment and the disparate treatment he received compared to other employees who engaged in similar conduct.

87.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the ADA.

88.    Defendant's actions constitute discrimination in violation of the ADA.

89.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) loss of stock options and restricted stock units; and (d) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, MARK ROSENHOCH, requests trial by

jury of all issues so triable as of right, demands judgment against the Defendant, AMAZON.COM SERVICES LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations, discriminating against Plaintiff based on his disabilities;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, stock options and restricted stock units, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA;

D.      Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

<u>COUNT II</u>
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Retaliation**
**42 U.S.C. §§ 12101-12213**

90.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 67 of this Complaint as though fully set forth herein.

91.    Plaintiff is a 45-year-old male who has been diagnosed with Type 1 diabetes requiring insulin management on a sliding scale dose, Post-Traumatic Stress Disorder (PTSD), high cholesterol requiring Atorvastatin,

Hashimoto's Thyroiditis requiring Levothyroxin, and high blood pressure requiring Lisinopril.

92.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

93.    Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

94.    At all times material herein, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA.

95.    Plaintiff engaged in protected activity under the ADA by: (a) requesting reasonable accommodations for his Type 1 diabetes; (b) taking FMLA leave related to his PTSD and family members' disabilities; (c) advocating for medical benefits coverage for his disabled son; (d) complaining about discrimination in the workplace; and (e) opposing unlawful employment practices.

96.    Plaintiff is also protected under the ADA based on his association with disabled family members, including his son who suffers from borderline intellectual functioning disorder with an IQ of 70 and his wife who suffers from ongoing health complications from cervical cancer treatment.

97.    Defendant subjected Plaintiff to adverse employment actions in retaliation for his protected activities, including but not limited to: (a) modifying and effectively denying his reasonable accommodations; (b) subjecting him to a hostile work environment; (c) suspending him from employment; and (d) terminating his employment.

98.    The adverse employment actions taken by Defendant were materially adverse to a reasonable employee and would dissuade a reasonable worker from engaging in protected activity.

99.    There is a causal connection between Plaintiff's protected activities and the adverse employment actions taken by Defendant, as evidenced by the timing and circumstances of the actions, the disparate treatment Plaintiff received, and statements made by Defendant's agents.

100.    Specifically, Defendant's termination of Plaintiff on December 6, 2023, occurred shortly after: (a) his return from FMLA leave related to his PTSD; (b) his complaints about the toxic work environment and discrimination; (c) his advocacy for his disabled son's medical benefits; and (d) his threats to go public with information about Defendant's legal violations.

101.    Defendant's stated reason for termination - downloading

confidential files to a USB drive - was pretextual, as evidenced by: (a) the
disparate treatment of other employees who engaged in similar conduct; (b)
the timing of the termination; (c) the retaliatory animus demonstrated by the
HR representative who terminated Plaintiff; and (d) statements that the
termination decision was "political."

102. Monique Johnson, the HR representative who terminated
Plaintiff, had been previously criticized by Plaintiff for her poor performance
in handling the medical benefits escalation, received negative feedback
about her performance, and took Plaintiff's criticism "personally,"
demonstrating retaliatory animus.

103. When Johnson contacted Plaintiff about his termination, she
included an exclamation point in her text message, appearing "excited" to
terminate him, further demonstrating retaliatory intent.

104. Taylor Stahl, the Director of all Investigations teams at Amazon,
was not Plaintiff's supervisor but a senior leader overseeing the
investigations function. During discussions with Plaintiff, Stahl stated that
the investigation Plaintiff had been conducting into the conduct of Vice
President Sarah Rhodes would be reassigned to him personally for
"political" reasons. He explained that Amazon leadership did not believe it

presented "good optics" for a Level 6 employee, such as Plaintiff, to investigate Level 10 executives. This admission demonstrates that Defendant's actions toward Plaintiff were driven by internal politics rather than legitimate business reasons, revealing the pretextual nature of the adverse employment decision.

105.   Defendant treated Plaintiff differently from other similarly situated employees, as Marc Smith, a Black male employee, had a finding for sharing confidential information but received no disciplinary action, while Plaintiff was terminated for similar conduct.

106.   The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

107.   As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace.

108.   Defendant violated the ADA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it and by actively engaging in such retaliation.

109. Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

110. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the ADA.

111. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) loss of stock options and restricted stock units; and (d) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships.

**WHEREFORE**, the Plaintiff, MARK ROSENHOCH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, AMAZON.COM SERVICES LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations by retaliating against Plaintiff for engaging in protected activity under the ADA;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, stock options and restricted stock units, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's retaliatory conduct and actions pursuant to the ADA;

D.   Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under

the ADA, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Disability Discrimination
### Florida Statutes §§ 760.01-11

112.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 111 of this Complaint as though fully set forth herein.

113.   Plaintiff is a 45-year-old male who has been diagnosed with Type 1 diabetes requiring insulin management on a sliding scale dose, Post-Traumatic Stress Disorder (PTSD), high cholesterol requiring Atorvastatin, Hashimoto's Thyroiditis requiring Levothyroxin, and high blood pressure requiring Lisinopril.

114.   At all times material herein, Defendant employed Plaintiff and

Defendant was and is an "employer" within the meaning of the FCRA.

115.    Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

116.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

117.    Plaintiff's Type 1 diabetes, PTSD, and other medical conditions constitute "handicaps" within the meaning of the FCRA as they substantially limit one or more major life activities.

118.    Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace based on his disabilities.

119.    However, Plaintiff was subjected to discrimination because of his disabilities through discriminatory treatment by Defendant and its

employees, supervisors, managers, and other agents, as more particularly alleged hereinabove.

120.    Specifically, Defendant discriminated against Plaintiff by: (a) initially granting but then effectively denying reasonable accommodations for his Type 1 diabetes; (b) failing to engage in the interactive process regarding accommodations for his PTSD; (c) subjecting him to disparate treatment based on his disabilities and association with disabled family members; and (d) terminating his employment under pretextual circumstances that were motivated by discriminatory animus.

121.    Plaintiff believed that Defendant's discriminatory behavior materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Defendant's discriminatory acts and statements materially altered the terms and conditions of Plaintiff's employment.

122.    Plaintiff did not welcome the discriminatory statements, acts, and treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

123.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, the discrimination suffered by

Plaintiff based on his disabilities, but did not take prompt remedial action to eliminate the discriminatory behavior.

124. Defendant violated the FCRA by subjecting Plaintiff to discrimination because of his disabilities and by failing to promptly correct such discrimination once it learned of it.

125. Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

126. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

127. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) loss of stock options and restricted stock units; and (d) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the

enjoyment of life, and irreparable damages to his family and relationships.

**WHEREFORE**, the Plaintiff, MARK ROSENHOCH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, AMAZON.COM SERVICES LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.  Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his disabilities;

B.  Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, stock options and restricted stock units, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.  Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by

Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Retaliation
### Florida Statutes §§ 760.01-11

128.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 67 of this Complaint as though fully set forth herein.

129.    Plaintiff is a 45-year-old male who has been diagnosed with Type 1 diabetes requiring insulin management on a sliding scale dose, Post-Traumatic Stress Disorder (PTSD), high cholesterol requiring Atorvastatin, Hashimoto's Thyroiditis requiring Levothyroxin, and high blood pressure requiring Lisinopril.

130.    At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

131.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

132.    Plaintiff engaged in protected activity under the FCRA by: (a) requesting reasonable accommodations for his disabilities; (b) opposing discrimination in the workplace; (c) advocating for medical benefits coverage for his disabled son; (d) complaining about discriminatory treatment based on disability; and (e) opposing unlawful employment practices.

133.    Defendant subjected Plaintiff to adverse employment actions in retaliation for his protected activities under the FCRA, including but not limited to: (a) modifying and effectively denying his reasonable

accommodations; (b) subjecting him to disparate treatment; (c) suspending him from employment; and (d) terminating his employment.

134. The adverse employment actions taken by Defendant were materially adverse and would dissuade a reasonable worker from engaging in protected activity under the FCRA.

135. There is a causal connection between Plaintiff's protected activities under the FCRA and the adverse employment actions taken by Defendant, as evidenced by the timing and circumstances of the actions and the disparate treatment Plaintiff received.

136. Defendant's stated reason for termination was pretextual, as Defendant treated Plaintiff disparately compared to other similarly situated employees who engaged in similar conduct but did not face termination.

137. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation under the FCRA.

138. As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other

agents of Defendant and to protect Plaintiff from retaliation in the workplace.

139.  Defendant violated the FCRA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it and by actively engaging in such retaliation.

140. Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

141. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the FCRA.

142.  As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) loss of stock options and restricted stock units; and (d) noneconomic damages, including, but not limited to, pain and

suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships.

**WHEREFORE**, the Plaintiff, MARK ROSENHOCH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, AMAZON.COM SERVICES LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff for engaging in protected activity under the FCRA;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, stock options and restricted stock units, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.   Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by

Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
### FMLA Interference and Retaliation
### 29 U.S.C. § 2601 *et seq.*

143.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 67 of this Complaint as though fully set forth herein.

144.   The prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA, 29 U.S.C. § 2615, apply to employers with respect to eligible employees taking, or attempting to take, leave under the FMLA.

145.   Under the FMLA, it is unlawful for an employer to take action against an employee because the employee exercises his FMLA rights. The FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual" for asserting his rights under the FMLA. 29 U.S.C. § 2615(a)(2).

146.   As more particularly alleged hereinabove, at all times material herein, Plaintiff was and is an "eligible employee" and Defendant was and is an "employer" within the meaning of the FMLA.

147.   At all times material herein, Defendant employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, and therefore was an "employer" within the meaning of the FMLA.

148.   At all times material herein, Plaintiff was employed by Defendant for at least twelve (12) months and had worked at least 1,250

hours during the twelve (12) month period immediately preceding his leave, making him an "eligible employee" under the FMLA.

149. As more particularly alleged hereinabove, Plaintiff qualified for leave under the FMLA due to his own serious health condition (PTSD) and to care for his spouse and son with serious health conditions.

150. On July 15, 2023, Plaintiff began FMLA leave that was initially approved through September 30, 2023, to address his PTSD and anxiety and to care for his wife and son's medical issues.

151. Prior to taking FMLA leave, Plaintiff was forced to exhaust three weeks of his accrued vacation time from June 26 through July 14, 2023, to address the medical issues affecting his family while attempting to resolve the benefits escalation, which interfered with his FMLA rights.

152. Defendant interfered with Plaintiff's FMLA rights by: (a) forcing him to use accrued vacation time before approving his FMLA leave; (b) failing to maintain his health insurance benefits during his leave period in accordance with FMLA requirements; (c) creating obstacles and delays in the leave approval process; and (d) retaliating against him upon his return from leave.

153. Defendant knew or should have known that Plaintiff was exercising his rights under the FMLA and was aware of Plaintiff's right to protected leaves of absence under the FMLA.

154. Defendant violated the FMLA and retaliated against Plaintiff by, among other things: (a) subjecting him to a hostile work environment upon his return from FMLA leave; (b) suspending him from employment shortly after his return from leave; (c) terminating his employment in retaliation for taking FMLA leave; and (d) failing to restore him to his previous position or an equivalent position upon his return from leave.

155. The timing of Defendant's adverse actions against Plaintiff, occurring shortly after his return from FMLA leave in October 2023 and culminating in his termination in December 2023, demonstrates a causal connection between his exercise of FMLA rights and the adverse employment actions.

156. Defendant's stated reason for termination was pretextual, as evidenced by the disparate treatment of other employees who engaged in similar conduct and the timing of the termination following Plaintiff's FMLA leave.

157.   Defendant's actions constitute violations of the FMLA's anti-interference and anti-retaliation provisions.

158.   As a direct and proximate result of Defendant's retaliatory and unlawful conduct, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to, lost wages, salary, employment benefits and other compensation lost by reason of Defendant's unlawful conduct in violation of the FMLA and, as such, is entitled to legal relief.

159.   In addition, Plaintiff is entitled to appropriate equitable relief including employment, reinstatement, and/or promotion. 29 U.S.C. § 2617(a)(1)(B).

160.   Further, Plaintiff is entitled to liquidated damages as Defendant did not act in good faith and had no reasonable grounds for believing that it was not violating the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

**WHEREFORE**, the Plaintiff, MARK ROSENHOCH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, AMAZON.COM SERVICES LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant violated the FMLA and engaged in unlawful conduct and

employment practices prohibited by the FMLA in that Defendant discriminated against and/or retaliated against Plaintiff for requesting to take leave under the FMLA and exercising his rights under the FMLA;

B.  Award damages to Plaintiff for lost wages, salary, employment benefits, stock options and restricted stock units, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of the FMLA, and to otherwise make him whole for any losses suffered because of such unlawful employment practices in violation of the FMLA;

C.  Award Plaintiff liquidated damages as recoverable under the FMLA and as consistent with law;

D.  Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

E.  Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

F.  Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VI
## VIOLATION OF THE FLORIDA PRIVATE WHISTLEBLOWER ACT
### Florida Statutes § 448.102 *et seq.*

161.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 160 of this Complaint as though fully set forth herein.

162.   At all times material herein, Defendant was Plaintiff's "employer" within the meaning of the Florida Private Whistleblower Act ("FPWA").

163.   At all times material herein, Plaintiff was an "employee" within the meaning of the FPWA.

164.   During his employment with Defendant, Plaintiff, acting in good faith, disclosed or threatened to disclose to appropriate governmental agencies activities, policies, and practices of Defendant that were in violation of law.

165. Specifically, Plaintiff reported and complained about: (a) discrimination based on disability in violation of federal and state civil rights laws; (b) retaliation against employees who reported discrimination; (c) failure to properly investigate substantiated discrimination complaints; (d)

benefits discrimination against disabled individuals; and (e) other violations of employment laws.

166.    Plaintiff discovered substantiated discrimination findings, including a finding against Director Chris Preston for not allowing a fair process for an Asian woman to be considered for promotion, which went unaddressed by Defendant's leadership despite being a substantiated equal employment opportunity violation.

167.    Plaintiff also discovered and reported uninvestigated claims of gender discrimination and harassment by former employee Marc Gross, which Defendant failed to properly investigate despite Plaintiff's escalation to multiple levels of management.

168.    Plaintiff complained to his supervisors about the "toxic work environment at Amazon, where employees that were deemed 'top performers' were never disciplined by the company and where no one bothered to follow-up on closed cases to make sure that corrective actions were correctly implemented."

169.    Plaintiff informed his supervisor Cathy Hanna that he was "contemplating going public with this information" to force Defendant to take accountability for its discriminatory practices and legal violations.

170. Plaintiff downloaded approximately 800 confidential investigation files to preserve evidence of Defendant's legal violations, including discrimination, retaliation, and failure to properly address substantiated findings of misconduct.

171. Plaintiff's disclosure and threatened disclosure of Defendant's violations of law were protected activities under the FPWA.

172. In retaliation for Plaintiff's protected whistleblowing activities, Defendant: (a) suspended him from employment on November 22, 2023; (b) subjected him to adverse treatment; and (c) terminated his employment on December 6, 2023.

173. Defendant's retaliation against Plaintiff violates the FPWA, which prohibits employers from taking retaliatory personnel action against employees who engage in protected whistleblowing activities.

174. Defendant's stated reason for termination - downloading confidential files - was pretextual, as Plaintiff downloaded the files to preserve evidence of legal violations, which is protected activity under the FPWA.

175. Ironically, during Defendant's Union Avoidance Training, Plaintiff was taught that "it was illegal to take action against and terminate

an employee for saying they would go public with information that they believed to be a violation of law," yet Defendant terminated Plaintiff for exactly this protected conduct.

176.   Taylor Stahl, the Director of all Investigations teams at Amazon and not Plaintiff's direct supervisor, informed Plaintiff that the reassignment of his investigation into the conduct of Vice President Sarah Rhodes was made for "political" reasons. Stahl explained that Amazon leadership did not view it favorably for a Level 6 employee, such as Plaintiff, to investigate Level 10 executives. This acknowledgment underscores that Defendant's actions were motivated by internal politics rather than legitimate business reasons, further demonstrating the retaliatory and unlawful nature of Plaintiff's termination.

177.   The timing and circumstances of Defendant's adverse actions against Plaintiff demonstrate a causal connection between his protected whistleblowing activities and the retaliatory personnel actions taken against him.

178.   As a direct and proximate result of Defendant's retaliatory actions in violation of the FPWA, Plaintiff has suffered and continues to suffer damages including, but not limited to: (a) lost wages and benefits; (b)

lost earning capacity; (c) loss of stock options and restricted stock units; (d) emotional distress; (e) mental anguish; (f) damage to his professional reputation; and (g) other economic and non-economic damages.

**WHEREFORE**, the Plaintiff, MARK ROSENHOCH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, AMAZON.COM SERVICES LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the Florida Private Whistleblower Act by retaliating against Plaintiff for engaging in protected whistleblowing activities;

B.    Award damages to Plaintiff for lost wages, salary, employment benefits, stock options and restricted stock units, and all other compensation denied or lost resulting from Defendant's retaliatory conduct in violation of the FPWA;

C.    Award Plaintiff compensatory damages for his pain and suffering, mental anguish, loss of dignity, and other non-economic damages caused by Defendant's retaliatory conduct;

D.   Award Plaintiff punitive damages as appropriate under the circumstances and as allowed by law;

E.   Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.   Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.   Grant such other and further relief as this Court may deem equitable, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Date this 14th day of October 2025.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com